| | |
|---|---|
| DISTRICT COURT BOULDER COUNTY<br><br>1777 6th Street, Boulder, Colorado  80306<br><br>Plaintiff:<br><br>Aimee Sanders<br><br>vs.<br><br>Defendant:<br><br>Parker Emerson<br><br><br>*Attorneys for Plaintiff*:<br><br>Ian T. Hicks, Reg. No. 39332<br>The Law Office of Ian T. Hicks LLC<br>6000 East Evans Avenue, Building 1, Suite 360<br>Denver, Colorado, 80222<br>Telephone: (720) 216-1511<br>Facsimile: (303) 648-4169<br>E-mail: ian@ithlaw.com | DATE FILED: February 20, 2022 1:53 PM<br>FILING ID: 47D716B85D270<br>CASE NUMBER: 2022CV30112<br><br><br>▲ COURT USE ONLY ▲<br><br><br>Case Number:<br><br>Division: |
| **PLAINTIFF'S COMPLAINT** ||

Aimee Sanders, by and through her undersigned counsel of record, the Law Office of Ian T. Hicks, LLC, hereby respectfully files this civil action, and in support thereof, states as follows:



## I.   NATURE OF THE CASE

1. "Mother is the name for God in the hearts and lips of all children."[1] One could scour the earth—from bustling urban environs to quaint pastoral vistas, across the barriers of language, national borders, religions, and culture—and never locate a single mind to quarrel with that universal truth. Aimee Sanders ("Ms. Sanders") is the mother of a young daughter, and Parker Emerson ("Mr. Parker") is the father. The singular fact of that sentence would compel, in most fathers, a deep and abiding respect, a connection of mutual purpose, a moral landscape that is relentlessly tailored to embrace the child's future in exchange for their own.

2. Mr. Parker is not most fathers. He is not most men. His ideology, zealously carried forward with brutal violence, explicit and constant threats, financial coercion, and as relevant here, the brazen publication of Ms. Sanders' intimate photographs, was and endures with a singular focus to enchain Ms. Sanders in a persistent state of fear and stress. And for Ms. Sanders, who has endured a gauntlet of life-circumstances outside her control, including but not limited to growing up as a foster child, Mr. Parker's consistent cruelty has had an *in terrorem* effect that strains the imagination.

3. This civil action, in the most simplistic terms, seeks just compensation for Mr. Parker's intentional disclosure of private, intimate photographs. Yet, it must be viewed, fundamentally, as another example of Mr. Parker's debased viciousness, which has included violently strangling Ms. Sanders—in front of their infant daughter—nearly to death, along with nearly every form and shape of domestic abuse known, ignominiously, to our national conscience. Viewed through that lens, Mr. Parker's malicious intent is plain and obvious. Ms. Sanders seeks monetary damages and other relief as stated more specifically below.

---

[1] William Makepeace Thackeray.

## II.  PARTIES, JURISDICTION, AND VENUE

4.  Plaintiff Aimee Sanders is a natural person and resident of Larimer County, Colorado.  Ms. Sanders is the biological mother of a two-year old daughter, who was fathered by Mr. Emerson.  The parties resided together for a short period of time years ago, but have been separated by virtue of Ms. Sanders' desire to avoid the persistent physical and psychological abuse inflicted by Mr. Emerson.

5.  Parker Emerson is a natural person and resident of the state of Texas.

6.  Venue is proper in this Court pursuant to C.R.C.P. 98 because the Defendant is a nonresident of this state, entitling Plaintiff to file this civil action in the county designated in the instant Complaint.  Furthermore, this Court is situated in a jurisdiction that accommodates the convenience of the witnesses, the parties, and the production of evidence.

## III.  GENERAL ALLEGATIONS

7.  Ms. Sanders and Mr. Emerson were formerly in an intimate relationship.

8.  They had a daughter, who was born on July 2, 2019.

9.  Mr. Emerson has a history of repeatedly attacking Ms. Sanders, physically.

10.  Mr. Emerson has a history of repeatedly harassing and emotionally abusing Ms. Sanders, as well.

11.  Due to some genetic defect, sexual or physical abuse within the Emerson household, serious emotional neglect, or a combination thereof, Mr. Emerson's parents had two sons, Dillon and Parker, who have a long history of violently abusing their intimate partners.

12.  In fact, Dillon Emerson was the perpetrator who chased his ex-girlfriend, Katie Cochran, out of his home as Katie was attempting to escape in her vehicle, shot at her 13 times,

one of which struck her in the face prior to her crashing into a parked construction apparatus, ultimately leading to her death from gunfire and a massive inferno.

13. Despite the fact that Dillon chased an unarmed, much-smaller woman who he had a history of abusing, as she was attempting to flee, and shot her from behind when she posed no possible risk to him or anyone else, Michael and Kim Emerson, his and Parker's parents, shockingly blamed Katie for her death and Dillon's subsequent suicide.

14. Nearly from the inception of their relationship, Mr. Emerson stalked, threatened, harassed and physically attacked Ms. Sanders.

15. On literally many dozens of occasions, Mr. Emerson harassed, stalked, and threated Ms. Sanders' friends with phone calls from his own phone number, wherein he called them derogatory names like "trailer trash" and "sluts" along with other niceties, and used these same terms to describe Ms. Sanders, the mother of his only child.

16. Mr. Emerson has also physically attacked, stalked, and threatened Ms. Sanders' boyfriends.

17. On one occasion, he travelled to a bar in Fort Collins, Colorado, approached Ms. Sanders then-boyfriend, made statements about Ms. Sanders, and then punched him in the face, causing injuries.

18. Mr. Emerson also repeatedly called and texted this same individual to threaten his life, to state that he was going to kill him, and, being the morally-bankrupt person that he is, made derogatory statements about the individual's infant daughter.

19. Mr. Emerson also told Ms. Sanders that he was stalking her then-boyfriend described above, and provided his exact home address to Ms. Sanders for which he had no legitimate reason to know, to accentuate the emotional impact of his statements.

20.     Insulting infants.  This is the type of person Mr. Emerson is, and his abusive behavior towards children does not stop there.  Unbelievable.

21.     During one unannounced visit to Ms. Sanders' home, Mr. Emerson, who was visibly intoxicated, loud, and threatening, yelled at Ms. Sanders then 13-year old son and told him "your mother is a slut and a whore."

22.     The use of vulgar and threatening words, if that were the extent of Mr. Emerson's acts committed against children, including his own, such behavior would be reprehensible enough.

23.     Unfortunately, it has been for worse, and far more damaging, than mere words.

24.     In one incident, which led to Mr. Emerson receiving criminal charges in Idaho, he broke down Ms. Sander's door with an axe (yes, this actually happened), charged through the debris, chased Ms. Sanders into her bedroom, and choked her nearly to death.

25.     During this near-murder, the parties' then-infant daughter was in bed next to him, who was at that time 4.5 months old.  Ms. Sanders was choked to the very edge of unconsciousness, twice, and was attacked further when, in a heap on the floor, she attempted to use her phone to summon help.

26.     It was only by mere luck that Ms. Sanders wasn't killed, or that her infant daughter wasn't severely injured or worse during the struggle.

27.     Ms. Sanders later went to the hospital, and had visible injuries.  She could have easily suffered a long term disability, and was lucky to have recovered.

28.     On many other occasions, Mr. Emerson threatened to kill Ms. Sanders, provided significant details on how he would do it and get away with it, called her to let her know that he

was watching her home to see if any men came or left, and held her physically hostage while screaming threats of injury, death, and child abuse while located at his apartment.

29. Literally every person with a connection to Ms. Sanders, from children, platonic friends, to intimate partners has been subjected to physical attacks, threats of violence, verbal insults and threats, and all other manner of unpleasantries.

30. Mr. Emerson's campaign of misconduct has been aimed at achieving one singular goal: to emotionally and physically terrorize Ms. Sanders and her children, to exert and maintain an iron grip of control over her life, to rob her of the freedom of self-determination and personal choice that are natural rights recognized as hallmarks of personal liberty enshrined as the founding principle of western civilization, from the Bill of Rights to the Declaration of the Rights of Man and of the Citizen.[2]

31. Predictably, this inflicted severe and lasting emotional distress and damage upon Ms. Sanders.

32. Ms. Sanders courageously braved this withering storm, obtained extensive counseling, and continues to work to overcome the severe Post-Traumatic Stress Disorder and memories that may never fully leave her consciousness.

33. The sheer outrageousness of Mr. Emerson's words and actions is amplified by the fact that Ms. Sanders, through no fault of her own, had already overcome so much in her life, and was therefore more susceptible to suffering emotional damage.

34. Mr. Emerson, however, was not done. The warpath continued.

---

[2] The Declaration of The Rights of Man and of the Citizen is a human civil rights document from the French Revolution, inspired by Enlightenment philosophers, the Declaration was a core statement of the values of the French Revolution and had a major impact on the development of popular conceptions of individual liberty and democracy in Europe and worldwide, and drafted with the assistance of Thomas Jefferson.

35. In July of 2020, he sent a series of emails to William Smith, an attorney for Ms. Sanders who had represented her in proceedings against Mr. Emerson.

36. These emails, of which there were several, began with Mr. Emerson repeatedly insulting Mr. Smith's physical appearance, continued by attacking Mr. Smith and his other clients besides Ms. Sanders through verbal insults, information contained in court filings, and ended with Mr. Emerson's barrage of insults against Ms. Sanders.

37. Most critically, the emails to Mr. Smith included a close-up image of Ms. Sanders's private area, which Mr. Emerson knew was confidential, private, and not publicly available.

38. Mr. Emerson's intent was to humiliate Ms. Sanders, cause her to suffer extreme emotional distress, and intensify his continuing crusade to terrorize Ms. Sanders and exert control over her life, while concurrently threaten her against taking lawful actions to defend herself and the future of their daughter.

39. The emails in question clearly demonstrate Mr. Emerson's intent to invade Ms. Sanders' privacy and cause her extreme emotional distress, for they are very similar in substance, content, and sequence to his prior communications to Ms. Sanders' friends and intimate partners.

40. Moreover, the images were embedded within the email itself, not within an attachment, a process that requires additional steps, ensures the reader of the email cannot avoid it, and was calculated to have maximum shock value.

41. No reasonable person would believe that the images were anything but private and confidential, and Mr. Emerson had actual knowledge of this fact.

42. As a proximate result of Mr. Emerson's transmission of the emails and images, Ms. Sanders suffered extreme emotional distress with physical symptoms of sleepless nights,

nightmares, panic attacks, headaches, and nausea, and was forced to engage in counseling as a result.

43. Ms. Sanders continues to suffer from Mr. Emerson's destructive acts, and lives in a state of constant fear.

44. It is clear that unless Mr. Emerson is held to account for his repulsive behavior, it will continue. Yet just because the past has failed us, provides no excuse to the present and future to follow that same path. And for that reason, we are here today and assert the claims for relief, identified below.

## IV.   CLAIMS FOR RELIEF

### First Claim for Relief – Invasion of Privacy by Intrusion

45. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

46. The Defendant intentionally invaded Plaintiff's privacy by the acts described herein.

47. The invasion would be highly offensive to a reasonable person.

48. The invasion was a proximate cause of Plaintiff's injuries, damages and losses, which were actually suffered and which will be proven at trial.

### Second Claim for Relief – Invasion of Privacy by Public Disclosure of Private Facts

49. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50. The Defendant made facts and images about the Plaintiff public.

51. Before tis disclosure, the private facts and images were private.

52. A reasonable person would find the disclosure highly offensive.

53. Plaintiff had injuries, damages, and losses, which were proximately caused by Defendant's wrongful conduct.

### Third Claim for Relief – Extreme and Outrageous Conduct IIED

54. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

55. The Defendant engaged in extreme and outrageous conduct by virtue of his wrongful actions alleged herein.

56. The Defendant engaged in that conduct recklessly or with the intent to cause the plaintiff severe emotional distress.

57. Plaintiff suffered severe and lasting emotional distress as a proximate result of Defendant's wrongful actions.

58. In addition, Plaintiff suffered injuries, damages, and losses in an amount to be proven at trial.

### Fourth Claim for Relief – Negligence

59. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

60. In the alternative to the foregoing claims, Defendant owed Plaintiff a duty in tort not to disclose the confidential images, breached this duty by transmitting them to Mr. Smith, and proximately caused Ms. Sanders to suffer injuries, damages, and losses in an amount to be proven at trial.

### V. PRAYER FOR RELIEF

Plaintiff requests the entry of judgment on every claim for relief in her favor, and that the Court award the following:

1. Pre and post judgment interest

2. Economic and non-economic damages for emotional distress and mental anguish;

3. Injunctive relief to preclude further publication of any intimate photographs, the deletion of all such photographs, and to cause Defendant to cease and desist in his harassment of Plaintiff; and

4. Such other and further relief as this Court deems proper.

Filed on February 20, 2022

                                    Respectfully submitted,

                                    THE LAW OFFICE OF IAN T. HICKS LLC

                                    By_____*s/ Ian T. Hicks*_____
                                            Ian T. Hicks, Esq.
                                    *Original Signature on File at The Law Office of Ian T. Hicks, LLC*

Plaintiffs' Address: Withheld for security reasons.